CITY OF CLIFTON, A MUNICIPAL CORPORATION OF NEW JERSEY, PETITIONER-APPELLANT, v. PASSAIC COUNTY BOARD OF TAXATION AND LLOYD B. MARSH, PASSAIC COUNTY TREASURER, DEFENDANTS-RESPONDENTS.

Argued October 20, 21, 1958—Decided December 15, 1958.

Mr. *Edward F. Johnson* argued the cause for the appellant City of Clifton.

Mr. *David M. Satz, Jr.,* Deputy Attorney General, argued the cause for the respondents (*Mr. David D. Furman,* Attorney General, attorney).

The opinion of the court was delivered by

HEHER, J. The issue here concerns the amount payable by the City of Clifton to the County of Passaic under the Added Assessment Act, *L.* 1941, *c.* 397, *N. J. S. A.* 54:4–63.1, particularly *section* 10, *N. J. S. A.* 54:4–63.10, providing that on February 15 of each year the municipality shall, in addition to the regular installment of county taxes to be paid on the given day, pay to the county an amount determined "by multiplying the total amount of assessments in the added assessment list for the previous year by the county and State rate for the preceding year, and such amount shall be for the use of the county."

On December 20, 1957 the county treasurer advised the city, by letter, that the Passaic County Board of Taxation had certified that $29,069.32 was due from the city to the county for added assessments levied by the city during 1957. Upon the county's refusal of the city's tender of $10,172.90 as the sum legally due, the city presented its petition to the State Division of Tax Appeals alleging that the county board of taxation had infringed *N. J. S. A.* 54:4–63.10 in that it had certified "an amount to be due at a different rate for each taxing district in the county, *viz:* 16 different rates, not one of which is the official county rate as set forth in the Abstract of Ratables for 1957," and praying that the "action" of the county board "in certifying the amount due for added assessments" for the stated year be set aside and that the Division certify the "correct amount" due and payable to the county by Clifton "and all other taxing districts." The case is here by our certification, *sua*

*sponte,* of the Division's dismissal of the city's "appeal."
Of this, more hereafter.

The city's argument is that it was and is incumbent on
the county board of taxation "to secure the taxation of all
property in the county at its true value, in order that all
property shall bear its full, equal and just share of taxes,"
*R. S.* 54:3–13; that after the county board "has compiled
a list of all the various sums necessary to be raised by
taxation within the county for State, county, municipal and
school use," it is required by *R. S.* 54:4–47; 54:4–48, "to
revise, correct and equalize the assessed values and to do
everything necessary for the taxation of all property in the
county equally and at its true value" and "apportion the
tax burden among the taxing districts"; that "when and
if errors were discovered," *R. S.* 54:4–53, "or when and if
assessments are reduced," *R. S.* 54:4–50, "any excess amount
of taxes paid by a municipality [is] to be computed by the
county board and credited to the municipality in the follow-
ing year"; that after the "equalized apportioning of the
tax burden is made by the county board," the governing body
of each municipality is obliged, *R. S.* 54:4–74, to pay to
the county treasurer, in four installments as therein specified,
the "amount of county taxes required to be assessed and
raised in such municipality," and as well "all the taxes to
be raised for state school and other state purposes," and
so the contention of the county board that it "has no duty
to perform and that the municipality is the only one upon
whom a duty is imposed by *R. S.* 54:4–63.10 is untenable";
that the Legislature did not intend that a municipality
"compute its own taxes nor [its] share of the county burden
without supervision," either for the "regular tax load" or
for the "amount to be contributed by virtue of the added
assessments levied after the regular load had been appor-
tioned"; and that the "duty to revise, correct and equalize
is imposed upon the county board for the added assessments
as well as for the regular assessments."

Apropos of the inclusion in the apportionment process
of the added assessments according to *N. J. S. A.* 54:4–63.10,

it is said that it is "common knowledge that those added assessments are not levied at 100% of true value of the property nor are they assessed at an equal ratio of true value with the added assessments levied in the other municipalities in the county," citing *Switz v. Middletown Twp., Monmouth County*, 23 *N. J.* 580 (1957), yet "the money paid or to be paid to the county from those added assessments 'shall be for the use of the county,' " and "this money must of necessity be credited to unanticipated income or surplus to be used by the county at some future date for general county purposes," but it "cannot be used during the year of levy and the year in which the rate was fixed since the budget for that year already has been expended"; and that "no equalization of added assesments is made in Passaic County nor does the county board credit any payment by virtue of the added assessments on account of any future payments to be made by a municipality when an equalized apportionment of the county burden does take place."

In a word, it is affirmed that "this is unjustifiable discrimination and a wilful failure by the [county board] to perform the duty imposed upon it by the legislature."

Conceding that *N. J. S. A.* 54:4–63.10 does not in terms require the county board to "compute the amount of taxes due from each taxing district in the county," it is insisted that the legislative purpose is "clearly defined" in *chapters* 3 and 4 of *Title* 54, and it is therein made the duty of the county board "to bring the added assessments levied in each taxing district to 100% of true value and thereafter multiply the aggregate true value by the county and state rate so that each taxing district in the county contributes to the county its full, fair and just share of money for county purposes."

The use of the singular "rate" in the direction to multiply the "total amount of added assessments" by the county and state rate is deemed significant. It is said that the Legislature "never meant a different rate for each of the 567 municipalities in the State"; it "meant the same rate for each municipality in each county"; and the "testimony shows

that 16 different rates are used in Passaic County—a different one for each municipality."

In fine, it is argued that the "regular procedure employed in arriving at the annual municipal tax should be followed even in the case of added assessments"; the statute "provides for the payment of added assessments, the method of determining the amount is not discussed and therefore should be the same method as used in determining the annual assessment and the county board is the proper, and only, authority to make such determination."

The Attorney General suggests that in view of the "unambiguous language" of *N. J. S. A.* 54:4–63.10, the action of the county board was "voluntary and not reviewable," as the Division found, but that affirmance on procedural grounds would prolong controversy in a vital area of tax administration, and in the public interest the issue should be resolved on the merits, citing *State v. Magonia,* 25 *N. J.* 95 (1957).

By *R. S.* 54:4–1, as amended by *L.* 1947, *c.* 413, all taxable real and intangible personal property becomes assessable "to the owner thereof with reference to the amount owned on October first in each year * * *"; and property "omitted from any assessment may be assessed by the county board of taxation within such time and in such manner as shall be provided by law." Fixing a day certain for the assessment enables the parties to regulate *inter se* the terms of a contract for the sale and purchase of the property and to provide, *inter alia,* for the satisfaction of the tax levy and the consequent lien; and it provides the municipality with a record of ownership for the proper billing of the taxes levied. And there are other considerations which need not be set down here. See, *e. g., United States v. State of Alabama,* 313 *U. S.* 274, 61 *S. Ct.* 1011, 85 *L. Ed.* 1327 (1940). But the *modus operandi* was deficient in two particulars: as to property (a) transferred by the municipality to a private person, or (b) improved after October 1 but before the end of the fiscal year. In the first case, the individual grantee or transferee would profit by the tax-free status of the municipality until the following fiscal year;

in the latter, the owner would escape taxation on the improvement.

The Added Assessment Act, *L.* 1941, *c.* 397, *N. J. S. A.* 54:4–63.1 *et seq.*, was adopted as a remedial measure. *Sections* 2 and 3 of the act, as amended by *L.* 1945, *c.* 137, *N. J. S. A.* 54:4–63.2, 3, provide that if real property is conveyed by a municipality to a private person after October 1 of any year but before January 1 following, or when any parcel of real property contains a building which has been erected, added to or improved after October 1 in any year and completed before January 1 following, the assessor shall determine the full and fair value of such parcel of real property as of said January 1 and enter the valuation or the excess over an assessment made the prior October 1, "as an assessment or an added assessment" of the property, in what is to be known as the "Added Assessment List, 19—," opposite the name of the owner. And when such a deed of real property has been made by a municipality between January 1 and October 1 in any year, or when any parcel of real property contains any building or other structure erected, added to or improved after October 1 and completed between January 1 and October 1 following, the assessor shall determine the full and fair value of such parcel as of the first of the month following the date of the delivery of such deed, or of such completion, and enter the valuation or the excess above an assessment made the previous October 1, as an added assessment against such parcel, in the "Added Assessment List, 19—," prorated for the balance of the taxable year. See *Appeal of New York State Realty & Terminal Co.,* 21 *N. J.* 90 (1956).

■ It is axiomatic that the fiscal burden of county government shall be apportioned equally and impartially among the several municipalities; and to this end the Legislature has directed the county board of taxation, *R. S.* 54:3–17, to "ascertain and determine, according to its best knowledge and information," the "general ratio or percentage of full value at which the real property of each taxing district is assessed according to the tax lists laid before the board,"

and to prepare an equalization table showing the assessed valuation of the real property in the several districts, "the ratio or percentage, if any, by which the assessed valuation should be increased or decreased in order to correspond to true value, and the true value of the real property within the district as determined by it." This is the principle by which equality of treatment and burden is had, *City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371 (1955); *Delaware, Lackawanna and Western R. R. Co. v. Neeld,* 23 *N. J.* 561 (1957); and no point is made here that this process has not achieved inter-municipal equality in the sharing of the burden as to the regular assessment list embodied in the equalization table.

By this procedure the aggregate true value of all real property within the County of Passaic was determined; and the rate of taxation to supply the needs of the county for 1957 was then found to be $.4596028614 per $100. But in Clifton real property was assessed at but 36.64% of true value, and so it was requisite in the equalization process that Clifton's share of the 1957 county budget be reckoned according to the ratio of $1.3134 per $100 of assessed valuation, rather than at the $.45 rate on the assumption that the assessments were made at full value.

The regular assessment list afforded the means of providing funds sufficient to support the county budget. But the cited statute, *L.* 1941, *c.* 397, *N. J. S. A.* 54:4–63.10, ordains that the municipality shall also, in addition to the "regular installment" of county taxes, pay to the county, for its own use, an amount determined by applying the county and State rate for the previous year to the added assessments, as in the case of the regular assessments. The municipality thus became subject to a twofold county levy based on the regular and the added assessment lists, of like kind and nature and to the same general end; and it is here that the Division ruled that this section of the statute, *N. J. S. A.* 54:4–63.10, obliges the municipality to pay to the county the sum due under the added assessment list without requisition by the county tax board, and there was

no duty on the board to inform the municipality of the amount so payable, and so its voluntary action is not appealable.

The taxes yielded by the added assessments aggregated $124,606.01; and the share of the fund chargeable to Clifton is determined by the ratio of $1.3134 per $100 of assessed valuation, the adjusted rate after equalization of the original assessments made by the several municipalities according to varying ratios of true value—the rate applied to the regular 1957 assessment list, rather than the uniform county rate of $.45 per $100. *N. J. S. A.* 54:4–63.10 does not provide otherwise. The rule of apportionment is necessarily the same. The application of the uniform county rate against the unequalized municipal assessments would subvert the basic statutory principle of equality of treatment and burden. The uniform county rate would fulfill the ruling principle and policy only if the local assessments were on a common level. If the uniform rate be applied to municipalities ruled by substantially different ratios of true value, then those assessing at the lower levels would reap an unjust advantage that equalization serves to avoid. This is mathematical truth.

 Absent evidence *contra,* and there was none such here, it is fairly to be presumed, on grounds of probability and, perhaps, of procedural convenience as well—an allowable circumstantial inference—that the added assessments were made by the several municipalities at the selfsame ratio of true value as those comprised in the regular assessment list for the given year. Compare *Meltzer v. Division of Tax Appeals,* 134 *N. J. L.* 510 (*Sup. Ct.* 1946); *Ocean County National Bank v. Stillwell,* 123 *N. J. Eq.* 337 (*E. & A.* 1938). And see *McCormick on Evidence,* §§ 309, 311, 313; *Wigmore on Evidence* (*3d ed.*), §§ 437, 2491. The degree of probability depends on the particular circumstances; but this is not to say that in such cases the presumption would be supportable beyond its application here: for the making of the assessments and their equalization are an annual process under the statutes, and the operation of the rule

is circumscribed accordingly. The rate used here is concededly the same as that applied to the regular 1957 assessment list to provide Clifton's share of the county budget; and thus the regular and added assessment lists were treated as one after equalization for this purpose, and properly so.

 N. J. S. A. 54:4–63.10 has an exegetical relation to the provisions for equalization embodied in R. S. 54:3–17 et seq. Statutes in pari materia, that is, those which relate to the same matter or subject, although some may be special and some general, are to be construed together as a unitary and harmonious whole, in order that each may be fully effective. New Jersey Turnpike Authority v. Washington Township, 16 N. J. 38 (1954); Maritime Petroleum Corporation v. City of Jersey City, 1 N. J. 287 (1949). The reconciliation of apparently conflicting statutes to conform to the spirit of the legislation as a whole is a common exercise of the judicial interpretive function. Turon v. J. & L. Construction Co., 8 N. J. 543 (1952). A construction "calling for unreasonable results will be avoided where reasonable results consistent with the indicated purpose of the act as a whole are equally possible." Elizabeth Federal Savings & Loan Ass'n v. Howell, 24 N. J. 488, 508 (1957). See Crawford, Statutory Construction, § 232. As one part of a statute is properly called in, to help the construction of another part, "and is fitly so expounded, as to support and give effect, if possible to the whole; so is the comparison of one law with other laws made by the same legislature, or upon the same subject, or relating expressly to the same point, enjoined for the same reason, and attended with a like advantage." Dwarris on Statutes (Potter), 189, 190.

 And the county board's determination and certification of the amount payable by Clifton to the use of the county measured by the Added Assessment List constituted "action or determination" by the board reviewable by the Division of Tax Appeals under R. S. 54:2–35, as amended by L. 1946, c. 161. It was action supplementing that taken pursuant to the Regular Assessment List, and to the same end, that is to say, the effectuation of the statutory scheme.

And it would be an arbitrary construction that would sustain the power in the one case but not the other. The proceeding here exemplifies the need for orderly administrative process at the outset; and such is the obvious legislative policy.

Finally, it is contended that there is "no requirement in *N. J. S. A.* 54:4–63.10 that the added assessments be equalized between the municipalities"; the "only requirement," it is said, is that the ordained payment be made at the "county and State rate for the preceding year," and since the added assessments "are made at a different ratio of the true value in each municipality, a discrimination exists and the statute requiring the payment of taxes thereunder" contravenes the Fourteenth Amendment to the Federal Constitution.

This reasoning overlooks the canon of interpretation, *Commercial Trust Co. of New Jersey v. Hudson County Tax Board*, 87 *N. J. L.* 179 (*E. & A.* 1914), that "of two interpretations of the language of a statute the one that renders the act constitutional will be deemed to express the legislative intent."

We have rejected the argument of undue discrimination in the terms of the statute, in that equalization is required for both assessment lists, and equalization was had here. Moreover, municipalities are political subdivisions of the State for the exercise of delegated governmental powers; and in the very nature of the relation the restraints of the Fourteenth Amendment have no application. *City of Trenton v. State of New Jersey*, 262 *U. S.* 182, 43 *S. Ct.* 534, 67 *L. Ed.* 937 (1922); *Camden County v. Pennsauken Sewerage Authority*, 15 *N. J.* 456 (1954).

The Division's judgment of dismissal is accordingly reversed; and the action of the county board of taxation is affirmed.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For affirmance*—Justice WACHENFELD—1.