CONSUMERS OIL CORPORATION OF TRENTON, NEW JERSEY, a New Jersey corporation, Appellant,

v.

PHILLIPS PETROLEUM COMPANY, a Delaware corporation.

No. 73-1597.

United States Court of Appeals, Third Circuit.

Argued Sept. 4, 1973.

Decided Nov. 12, 1973.

As Amended Nov. 29, 1973.

---

Philip J. Albert, Levy, Levy, Albert & Marcus, Trenton, N. J., for appellant.

Howard P. Danzig, Newark, N. J., on the brief, Charles Danzig, Newark, N. J., of counsel, Riker, Danzig, Scherer & Brown, Newark, N. J., for appellee.

Before HASTIE, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

In this diversity action, Consumers Oil Corporation, a New Jersey jobber, asked the District Court for the District of New Jersey to restrain Phillips Petroleum Co., a national refiner of petroleum products, from terminating the franchise under which Consumers buys gasoline from Phillips for resale. Consumers contends that Phillips' attempt to terminate the franchise violates the New Jersey Franchise Practices Act, N. J.S.A. 56:10, even though Phillips is acting strictly in accordance with express terms of the contract that created the franchise and provided for its termination.

After an evidentiary hearing, the district court denied a motion for preliminary injunction. Consumers has appealed from that order.

Under successive contracts, Consumers has been a Phillips franchisee since 1961. The contract now in controversy related to gasoline only and became effective July 1, 1970. It granted a franchise for a stated term of one year and provided that automatic extensions for like periods would follow unless either party, at its pleasure, should terminate the contract by written notice at least 90 days prior to the end of the first or any subsequent contract year.

The New Jersey Franchise Practices Act became effective December 21, 1971, when the contract between the parties was in its second year. Thereafter, neither party elected to terminate the contract as of June 30, 1972, although on June 16, 1972 Phillips notified Consumers and all other jobbers similarly situated throughout its "northeast marketing area" that it did not intend to renew or extend its existing contractual commitments to them. Consistent with that announcement, Phillips thereafter gave Consumers timely formal notice of termination of their contract effective July 1, 1973.

Neither party has expressed dissatisfaction with the performance of the other. The record contains an affidavit, filed by appellant, stating that the contract with Consumers had been and was likely to continue to be profitable to Phillips. Moreover, there is evidence that Phillips could continue to supply Consumers with gasoline from the pipeline in northern New Jersey despite termination of its other New Jersey activities. However, the district court found that, before the occurrence of the present gasoline shortage, Phillips had

decided to withdraw entirely from its northeast marketing area (the New England states, New York, New Jersey, Delaware and all of Pennsylvania except a small area centering on Harrisburg and contiguous to Maryland) because in totality its operations there had proved unprofitable.

Section 56:10–5 of the New Jersey Franchise Practices Act, after authorizing termination of a franchise where the franchisee has either abandoned the franchise or been convicted of certain wrongdoing, continues as follows:

"It shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause. For the purposes of this act, good cause for terminating, canceling, or failing to renew a franchise shall be limited to failure to substantially comply with those requirements imposed upon him by the franchise."

Section 56:10–8 reads:

"This act shall not apply to a franchise granted prior to the effective date of this act, provided, however, that a renewal of a franchise or an amendment to an existing franchise shall not be excluded from the application of this act."

■ The district court found that denial of a preliminary injunction would result in irreparable harm to Consumers but nevertheless denied relief. It reasoned that the franchise had been granted before the December 1971 effective date of the Act and that, within the meaning of Section 56:10–8, it had not been "amended" or "renewed" since that time. Accordingly, the court concluded that the Act did not apply to this case. However, in our view, the extension of the present franchise for one year beginning July 1, 1972 can reasonably be considered a "renewal" within the meaning of the Act.

Section 56:10–8 was included in the Act because of doubt about the constitutionality of retroactive application. In substance, the doubt was resolved by restricting the Act to those pre-existing franchises that should be extended voluntarily after the Act's adoption. The meaning of "renewal" can rationally be said to be as broad as this purpose. Here, the parties drafted their agreement as a one year contract that would be extended automatically for successive one year terms unless either party, at its option and without penalty, should give timely notice during any contract year that the contract would not be extended beyond the end of the year. Thus, when the Franchise Practices Act became law, neither party was obligated beyond June 30, 1972. The acquiescence of both parties was required for the extension of their contract beyond that date. This suggests that, for purposes of the Act, it makes no difference whether the agreed method of making acquiescence manifest was by affirmative action or by nonaction. In either event, the necessity for a manifestation of assent by both parties to the continuation of the franchise beyond June 30, 1972, made the extension of the contract voluntary and probably within the intended legislative reach. If a decision favorable to Consumers on this issue could dispose of the case, we would be inclined, on the basis of the preceding analysis, to reverse the district court. But disposition of a second issue, which we must face if we rule that the franchise was renewed in 1972 within the meaning of the statute, renders actual decision of the renewal question both unnecessary and ill-advised.

The fact that the attempted termination of appellant's franchise occurred in the context of Phillips' undertaking to discontinue marketing its products throughout its 8-state "northeast marketing area" of which New Jersey is part, precipitates the other question of statutory construction. Is the Act to be read and interpreted as precluding a franchisor's comprehensive withdrawal from the New Jersey market, as distinguished from mere discontinuance of a particular New Jersey franchise while the franchisor's marketing in New Jersey continues through other franchisees

or through its own direct operations? On its face the Act is silent concerning this question, for it is drafted in terms of problems and dissatisfactions that may arise in connection with a particular franchise. Thus, only delinquency or dereliction of the franchisee is stated as "good cause" for a refusal to renew a franchise. On the one hand, it can be inferred that in adopting this scheme of regulation the legislature did not undertaken to regulate franchise terminations incidental to a discontinuance of all marketing within the state. On the other hand, one might reason that in specifying and limiting those shortcomings in the franchisee's performance that justify termination of a franchise, the legislature meant to disapprove all other justifications, including a determination to discontinue business throughout the state.

We have examined the legislative history of the Act and do not find it decisive on this question of interpretation. Witnesses who testified in support of the bill expressed concern about capricious action by franchisors, coercive uses of the threat of termination to impose onerous burdens on franchisees and refusal to renew one successful franchise in order to give that business opportunity to a more favored entrepreneur. Certainly, these were the problems and conceived injustices upon which legislative attention focused. We have found nothing to indicate whether the legislature even considered such a problem as this case presents, much less

whether the statute was intended to apply so comprehensively.

In our view, these circumstances call for consideration of whether, in a case where jurisdiction is based solely upon diversity of citizenship, a federal court should abstain from attempting to anticipate the answer New Jersey courts would give to doubtful questions of interpretation of a New Jersey statute. Our concern is heightened by awareness that an interpretation of the Franchise Practices Act as prohibiting Phillips from discontinuing its operations throughout the State would precipitate substantial constitutional questions.[1] For it is arguable that to prohibit a franchisor from discontinuing all business within the state would unreasonably burden commerce, or deprive the franchisor of liberty or property without due process of law, or both. And if an imposed obligation to continue marketing in New Jersey is thought to be justified by the franchisor's election to grant or renew franchises in the State with knowledge of the statutory requirement, the doctrine of "unconstitutional conditions" may well be invoked against the statute. Whether or not such attacks would prevail, we are persuaded that they would not be frivolous.[2]

 Since these constitutional questions are substantial and the New Jersey courts might interpret the statute in a way that would avoid them, we think it appropriate that the federal courts abstain from deciding the merits of the present controversy at this time.[3] In so

1. The Supreme Court of New Jersey has indicated that it is sensitive to such danger. See, e. g., City of Clifton v. Passaic County Board of Trustees, 1958, 28 N.J. 411, 147 A.2d 1.

2. Burden on commerce: *Compare*, South Carolina State Highway Dept. v. Barnwell Bros., 1938, 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734, *with*, Pennsylvania v. West Virginia, 1923, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117; Southern Pacific Co. v. Arizona, 1945, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915, and Bibb v. Navajo Freight Lines, Inc., 1959, 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003.

Deprivation of property without due process: *Compare*, Pennsylvania Coal Co. v. Mahon, 1922, 260 U.S. 393, 43 S.Ct. 158, 67 L. Ed. 322, *with*, Goldblatt v. Hempstead, 1962, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130.

Unconstitutional conditions: For discussion of this doctrine and the cases in which it has been invoked, see Hale, Unconstitutional Conditions and Constitutional Rights, 1935, 35 Col.L.Rev. 321; Note, Unconstitutional Conditions, 1960, 73 Harv.L.Rev. 1595.

3. Although our decision to abstain is based primarily on our uncertainty regarding the second issue discussed, we think that, since the case must be presented to the New Jer-

ruling, we are mindful that the Supreme Court recently vacated a federal decision that the Franchise Act of Puerto Rico was intended to apply retroactively and, as thus interpreted and applied, was unconstitutional. In the Supreme Court's view, it was appropriate and desirable that the federal courts abstain from ruling upon the matters in issue until the Supreme Court of Puerto Rico should have had an opportunity to interpret the statute and, in so doing, perhaps avoid the constitutional question. Fornaris v. Ridge Tool Co., 1970, 400 U.S. 41, 91 S. Ct. 156, 27 L.Ed.2d 174, *Accord,* Lake Carriers' Ass'n v. MacMullan, 1972, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257, where the Court said: "the paradigm case for abstention arises where the challenged state statute is susceptible of 'a construction by the state courts that would avoid or modify the [federal] constitutional question.'"

For these reasons the judgment denying a preliminary injunction will be affirmed and the cause will be remanded with direction to retain jurisdiction but stay proceedings in appropriate exercise of the policy of federal abstention pending Consumers' expeditious resort to a state court for a determination whether the Act, properly construed in the two particulars discussed in this opinion, applies to this case. Since the question whether the Act, authoritatively construed, is constitutional will still be pending in the federal forum, the parties need not ask for a state court decision on this ultimate question.

The order of this court staying the termination of the franchise in suit pending the outcome of this appeal shall remain in force and effect until January 1, 1974, at which time Consumers, upon

a showing that it is proceeding expeditiously in a state court, may obtain a further stay in the district court. The district court can then dispose of this case as may be appropriate in the light of authoritative interpretation of the statute.[4] *Cf.* England v. Louisiana State Board of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440.

Neither party shall be awarded costs on this appeal as against the other.

sey courts for that reason, the controversy over the meaning of the term "renewal" should be tendered as well. That question, too, could be decided in a way that would render the constitutional issues moot. The disposition of Clay v. Sun Insurance Company, Ltd. 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, on remand, 5th Cir. 1967, 319 F.2d 505, 508 n. 2, which presented a similar

situation, supports our decision to abstain from deciding either question.

4. If the state courts should decline to construe the statute while the district court retains jurisdiction over this case and the ultimate constitutional issue, the district court should proceed to decide all issues, including those of statutory construction, essential to the disposition of this controversy.