716 A.2d 541 (1998)
315 N.J. Super. 17
NEW JERSEY LAND TITLE ASSOCIATION, Plaintiff-Appellant,
v.
STATE RECORDS COMMITTEE, DIVISION OF ARCHIVES AND RECORDS MANAGEMENT IN THE NEW JERSEY DEPARTMENT OF STATE, Union County Clerk, Defendants-Respondents, and
Hunterdon County Clerk, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1998.
Decided August 25, 1998.
*542 Joseph M. Clayton, Jr., Princeton, for plaintiff-appellant.
John C. Turi, Deputy Attorney General, for defendant-respondent State Records Committee (Peter Verniero, Attorney General; Mary C. Jacobson, Assistant Attorney General, of counsel; Mr. Turi, on the brief).
John M. Carbone, Ridgewood, for defendant-respondent Union County Clerk (Carbone & Faasse, attorneys; Mr. Carbone, on the brief).
No other parties participated in this appeal.
Before Judges SKILLMAN, EICHEN and STEINBERG.
The opinion of the court was delivered by EICHEN, J.A.D.
This appeal arises from a dispute between plaintiff New Jersey Land Title Association (NJLTA), an organization of title insurance companies, and defendants, the Clerks of Union and Hunterdon County (the Clerks), the Division of Archives and Records Management[1] (DARM) and the State Records Committee.[2] DARM is in the Department of State and serves as staff to the State Records Committee, an administrative agency created by the Legislature under the Destruction of Public Records Law (1953) (the Destruction of Public Records Law), N.J.S.A. 47:3-15 to -32.
The dispute concerns the request by the Clerks to destroy a series of public records consisting of notices of settlement, lis pendens and federal tax liens whose statutory effective dates have expired (the records series).[3] On September 19, 1996, the State Records *543 Committee issued a final decision approving the Clerks' request to destroy these records. NJLTA objected, claiming that the Clerks are statutorily required to permanently retain the records series, and filed an appeal from the decision. On November 1, 1996, we granted a stay of the decision pending the appeal. We now reverse. Although we conclude that the State Records Committee has the authority to promulgate retention schedules and approve the destruction of the records series without express statutory authorization, we are nonetheless convinced that the Committee's decision to authorize destruction of these records was arbitrary and unreasonable in the circumstances presented.
These are the pertinent factual circumstances surrounding the dispute. In September 1994, NJLTA filed an action against the State's county clerks, registers of deeds and mortgages, and DARM, charging them with "inconsistencies, irregularities and unreasonable delays in filing, indexing and providing public access to certain series of land records." Sometime thereafter, NJLTA voluntarily dismissed its action because DARM agreed to "consider an amendment to its retention and disposition schedule and regulations to provide a permanent record of [notices of settlement, lis pendens and federal tax liens] before the actual filings are destroyed."[4]
On June 20, 1995, DARM submitted a report to the State Records Committee recommending that the Committee lengthen the retention period for this category of records beyond the periods set forth in its general Records Retention Schedule.[5] DARM specifically recommended that the retention period for notices of settlement be extended from six years after their expiration date to twenty years from the date of filing or "renewal" of judgment; that the retention period for notices of lis pendens be extended from three years from the date of filing to sixty years; and that the retention period for notices of federal tax liens be extended from ten years after expiration to sixty years.
On the same date, the State Records Committee "voted to endorse DARM's report and recommendations for extending the retention periods of the three record[s] series and [to] call upon the Legislature to amend the statutes governing their retention accordingly." It also voted to instruct DARM "to withhold approval of any request for the destruction of the three records series until June 30, 1996, unless the records have been microfilmed in accordance with State standards."
The minutes of the June 20, 1995 meeting of the State Records Committee reveal the results of a survey conducted of the retention practices for these types of records by the twenty-one county clerks and registers of deeds and mortgages. The survey discloses that a majority of the counties "microfilm most or all [notices of settlement, lis pendens and federal tax liens] and retain them far longer than the State's schedule now requires." At the same time, the survey apparently revealed "a notable lack of uniformity among the counties regarding microfilming of the records: some doing all three series, others just two, and still others only one." The minutes also disclose that several members of the Committee expressed concern about the "possible costs that lengthened retention might impose," remarking that "the adoption of a longer retention *544 period for the records could be construed as a State mandate for which counties might demand State funding to implement."
On June 24, 1996, the State Records Committee changed its position and adopted a resolution which stated in relevant part:

The State Records Committee ... finds that longer retention of these records may be in the public interest. The Committee, however, recognizes that retention schedules for all public records must be consistent with existing laws of New Jersey and the United States. Moreover, the Committee is mindful that increasing the retention requirements for records maintained by County and local governments of New Jersey may invoke the State constitutional provision regarding unfunded mandates. For these reasons the State Records Committee resolves to alert the State Legislature that lengthened retention of these records series may be in the public interest, and defers amending the County Clerk's retention schedule until such time as the State Legislature takes action regarding the statutory retention of the records. (emphasis added)
Four days later, on June 28, 1996, the Clerks sought approval to destroy the records which was granted by the Committee on September 19, 1996.[6] This appeal followed.
On appeal, NJLTA argues that "the administrative rule permitting the destruction of records affecting title to real estate is void because there is no specific [statutory] authorization for such destruction." NJLTA maintains that N.J.S.A. 47:3-9 provides the only specific authority for the destruction of public records filed or recorded with the office of the county clerk or register of deeds and mortgages.[7] NJLTA asserts that because the records series are not specifically authorized by N.J.S.A. 47:3-9 as the type of records which may be destroyed, and further because subsection (dd) of the statute expressly excludes notices "involving title to real ... property" from the category of notices that the clerks or registers may destroy, their inclusion on the Records Retention Schedule is ultra vires. NJLTA supports its position by relying on N.J.S.A. 47:1-14 which contains a general prohibition against the destruction of public records "except as specifically permitted by law"; it argues that because there is no "law" that "specifically permit[s]" the destruction of the types of records represented by the record series, these records must be permanently retained until the Legislature determines otherwise. NJLTA also maintains that N.J.S.A. 47:1-14 prohibits the "construction of any law, statute, or regulation [as] permit[ting] destruction ... of any such records by implication."
Defendants DARM and the State Records Committee counter that the Destruction of Public Records Law empowers the State Records Committee to determine the retention period for the category of public documents in the records series and that the Committee can approve their removal and destruction without express legislative directive. They maintain that if the Legislature had intended these documents to be permanently retained, it would have expressly provided for their preservation. They contend that the State Records Committee's *545 powers derive from the broad statutory authority granted by the Legislature under the Destruction of Public Records Law, specifically the provisions that (1) authorize DARM to "establish specific classifications and categories for various types of ... `public records,'" N.J.S.A. 47:3-18; (2) empower DARM, with the Committee's approval and in cooperation with county and municipal agencies, to prepare retention schedules for all public records common to all local agencies, N.J.S.A. 47:3-19; (3) require the approval of DARM and the State Records Committee before any records may be destroyed, N.J.S.A. 47:3-17 and 47:3-20; and (4) empower the State Records Committee to "promulgate ... regulations, not inconsistent with law, as may be necessary to adequately effectuate [its] powers and duties," N.J.S.A. 47:3-20.
The Union County Clerk contends that the Office of the County Clerk is vested with broad discretion in the administration of the recording system and that the courts should not interfere with its authority; that NJLTA has no standing to challenge the State Records Committee's decision to destroy the records series; and that the instant dispute involves a political question, inappropriate for judicial resolution.

I.
Both the Destruction of Public Records Law, N.J.S.A. 47:3-15 to -32, and the Act, N.J.S.A. 47:3-9 to -12, relate to the same subject matter, namely the retention, preservation and destruction of important public documents. The statutes went into effect at approximately the same time,[8] and are both part of Title 47, which is entitled "Public Records." Indeed, the Destruction of Public Records Law actually makes reference to the Act. See N.J.S.A. 47:3-32. Hence, they should be read in pari materia and "construed together as a unitary and harmonious whole, in order that each may be fully effective." Clifton v. Passaic County Bd. of Taxation, 28 N.J. 411, 421, 147 A.2d 1 (1958); Mimkon v. Ford, 66 N.J. 426, 433-34, 332 A.2d 199 (1975). To glean the sense of the enactments, we must examine
[their] object and the nature of the subject matter and the whole of the context of the acts in pari materia. The parts of a statute are to be viewed in relation to the whole, and the motive which led to the making of the law, and reconciled, if possible, to carry out the reasonable probable legislative policy. The general intention of the act controls the interpretation of its parts.
[Hackensack Water Co. v. Ruta, 3 N.J. 139, 147, 69 A.2d 321 (1949) (citations omitted).]
The Assembly Bill preceding the enactment of the Destruction of Public Records Law contains the sole legislative history concerning the "object" of the statute.[9] It contains the following statement:
The object ... is to establish a sound archival program which will insure that basic public records in this State will be safely preserved for posterity and which will permit the systematic destruction, under approved schedules, of public records which have outlived their usefulness. It provides for the establishment of a State records committee to advise on the legal, fiscal and historical aspects of records considered for destruction.
[Statement to Assembly Bill No. 538 (Sept. 18, 1953).]
In enacting Title 47, the Legislature set forth a comprehensive scheme to guide and direct state and county offices, including county filing and recording offices, in the proper care, custody and control required for maintaining, preserving and disposing of public records. The term "public records" is broadly defined in the Destruction of Public Records Law as follows:
any paper, written or printed book, document or drawing, map or plan, photograph, microfilm, sound-recording or similar device, or any copy thereof which has been made or is required by law to be received *546 for filing, indexing, or reproducing by any officer, commission, agency or authority of the State or of any political subdivision thereof, ... in connection with the transaction of public business and has been retained by such recipient or its successor as evidence of its activities or because of the information contained therein.

[N.J.S.A. 47:3-16.]
In regard to the disposition of such records, the Legislature empowered the county clerks and registers of deeds and mortgages to direct the removal and destruction of those "public records" specifically enumerated in N.J.S.A. 47:3-9. However, the power conferred by the Legislature to dispose of these records was not unlimited. In N.J.S.A. 47:1-14 the Legislature made it clear that "[n]o official responsible for maintaining public records ... could destroy, obliterate or dispose of [the records] ... except as specifically permitted by law." (emphasis added) We view this phrase, "specifically permitted by law," as a legislative directive to the clerks and registers of deeds and mortgages, among other officials, that they may not dispose of any public records without first obtaining the consent of the State Records Committee as provided in the Destruction of Public Records Law, see N.J.S.A. 47:3-17 to -20. We refer specifically to those provisions in N.J.S.A. 47:3-17 to -20 which require the consent and approval of DARM and the Committee before an official may destroy any of the public records listed in N.J.S.A. 47:3-9, even though the retention period contained in the statute for the particular record has expired.
In addition, we note DARM's power to establish "specific classifications and categories for various types of `public records,'" N.J.S.A. 47:3-18, and its power to establish retention schedules for those records, N.J.S.A. 47:3-19; see N.J.A.C. 15:3-3.8(b), 3-3.9 (concerning local records retention schedules); see also N.J.A.C. 15:3-2.3, 3-2.24, 3-2.25 (concerning State records retention schedules). Hence, it is clear that the Legislature gave DARM and the State Records Committee broad authority over the disposition of all "public records," not just those enumerated in N.J.S.A. 47:3-9. See N.J.S.A. 47:3-16.
There is no indication in Title 47 that the Legislature intended to limit the Committee's power to authorize destruction of only those records listed in N.J.S.A. 47:3-9. Hence, the exclusion of "notices involving title to real ... property" from the list of records contained in N.J.S.A. 47:3-9(dd) does not mean that the records series involved here must be permanently retained. Rather, this exception simply indicates that the Legislature did not wish to mandate a specific retention period for these documents, leaving that decision to the Committee. If we were to accept NJLTA's arguments, we would have to conclude that any "public record" not included in N.J.S.A. 47:3-9 would have to be permanently retained. We do not believe that the Legislature intended this result. Indeed, the Records Retention Schedule approved by the Committee contains various categories of public records that are not contained in the list of records set forth in N.J.S.A. 47:3-9.
We are satisfied that the Legislature intended the Committee to have the widest range of regulatory power over the retention and disposition process. After reviewing "the whole of the context of the acts in para materia," we are convinced that the Legislature conferred such broad powers on the State Records Committee because of its recognition of the need for centralizing control of the State's public records in a single agency whose expertise would assure uniformity in the decision-making process concerning the retention and disposition of those records. Accordingly, we reject NJLTA's challenge to the authority of the State Records Committee to approve the destruction of the records series.

II.
Notwithstanding its broad powers, however, the Committee's final decision approving the destruction of the records series was arbitrary and capricious. We recognize that in the usual case, we defer to the agency's expertise; however, where the decision is "wide of the mark," we are not bound. Mayflower Securities v. Bureau of Securities, *547 64 N.J. 85, 93, 312 A.2d 497 (1973). The State Records Committee agreed with DARM that longer retention schedules than it had initially established in its Records Retention Schedule were advisable for notices of settlement, lis pendens, and federal tax liens. However, the Committee ignored its own finding that such "longer retention of these records may be in the public interest" and approved the destruction of the records series. This it did without providing any rational basis for the determination other than the ambiguous remark that "retention schedules for all public records must be consistent with existing laws of New Jersey and the United States," and that "increasing the retention requirements ... may invoke the State Constitutional provision regarding unfunded mandates." We reject the first reason as uncertain in its meaning and incorrect. Although we cannot truly ascertain the meaning of these cryptic references to "existing law," to the extent that the Committee viewed N.J.S.A. 47:3-9 as a limitation on its statutory authority, we reject that view. As for its second reason, although the Committee suggests in its resolution that lengthening the retention period for the records series may constitute an "unfunded mandate," the Committee has not undertaken to present any support for that position on this appeal and, therefore, we deem the position abandoned.

III.
Finally, we reject as clearly without merit the Union County Clerk's arguments that the court should not interfere with its broad discretion in administering the recording system, that NJLTA lacks standing to challenge the decision of the State Records Committee to destroy the records series, and its claim that the dispute involves a political question inappropriate for judicial resolution. R. 2:11-3(e)(1)(E).
Reversed.
NOTES
[1] Whenever the Bureau of Archives and History in the Department of Education is referred to in the statutes implicated by this appeal, it is considered to mean and refer to DARM. See N.J.S.A. 47:1-15.
[2] The Committee's members are the State Treasurer, the Attorney General, the State Auditor, the Director of the Division of Local Government in the Department of the Treasury, and the head of the Bureau of Archives and History in the Department of Education. N.J.S.A. 47:3-20.
[3] The records series consist of hard copies of notices of settlement with inclusive dates from January 2, 1989 to December 31, 1989, and January 1980 through December 1989; federal tax liens from December 1933 through August 1985; and lis pendens from March 1968 through December 1992. A notice of settlement is effective for forty-five days from its filing date, N.J.S.A. 46:16A-5; a lis pendens is effective for three years, N.J.S.A. 2A:15-11; and a federal tax lien expires after ten years, 26 U.S.C. § 6323(g)(3)(A).
[4] There were other reasons why NJLTA agreed to dismiss the action, but they are not relevant to this appeal.
[5] DARM prepared a general Records Retention Schedule for Municipal and County Officers (the Records Retention Schedule), and the State Records Committee approved the schedule in cooperation with county and municipal agencies. N.J.A.C. 15:3-3.8(b). The Records Retention schedule is the functional equivalent of a regulation or rule. It consists of a list of public records with retention periods. "The retention periods indicated are recommendations based upon experience, legal requirements in some instances, and the best information available as to the length of time various record series should be kept." N.J.A.C. 15:3.8(c).
[6] The decision is contained in the Minutes of the State Records Committee dated September 19, 1996. No formal written decision was issued.
[7] N.J.S.A. 47:3-9 to -12 is titled: "An Act concerning certain papers and records on file in the offices of the county clerks and registers of deeds and mortgages, and supplementing chapter three of Title 47 of the Revised Statutes (the Act)." See Historical Note to N.J.S.A. 47:3-9.

N.J.S.A. 47:3-9 provides in pertinent part:
Whenever papers of the character hereinafter described have been on file in the office of any county clerk or register of deeds and mortgages for more than the number of years specified, the county clerk or register of deeds and mortgages, as the case may be, having charge thereof, may direct such papers to be removed and destroyed or the records therein otherwise effectively obliterated, subject, however, to the limitations imposed herein in respect to said papers.
The following are the papers which may be removed and destroyed or the records therein effectively obliterated pursuant to the provisions of this act.
* * * *
(dd) Notices and other papers, authorized or required by law to be filed but not recorded and not involving title to real or personal property or to proceedings or actions in any court, after ten years.
[8] The Act became effective on July 1, 1953; the Destruction of Public Records Law became effective a few months later on September 18, 1953.
[9] We are advised there is no legislative history concerning the enactment of N.J.S.A. 47:3-9.