WHITE HEN PANTRY, a division of Jewel Companies, Inc., Plaintiff-Appellant,

v.

Gerald BUTTKE and Buttke Enterprises, Inc., Defendants-Respondents-Petitioners.†

Supreme Court

*No. 79-1532. Argued January 6, 1981.—Decided February 2, 1981.*

(Also reported in 301 N.W.2d 216.)

† Motion for reconsideration denied, with costs, on March 9, 1981.

For the petitioners there were briefs by *Alan H. Deutch, Lawrence P. Kahn* and *Deutch & Hansher, S.C.,* of Milwaukee, and oral argument by *Alan H. Deutch.*

For the plaintiff-appellant there was a brief by *Andrew O. Riteris, Charles P. Graupner* and *Michael, Best & Friedrich* of Milwaukee, and oral argument by *Andrew O. Riteris.*

SHIRLEY S. ABRAHAMSON, J. This is a review of a decision of the court of appeals, *White Hen Pantry v. Buttke,* 98 Wis.2d 119, 295 N.W.2d 763 (1980), which reversed an order of the circuit court for Milwaukee county, John E. McCormick, Circuit Judge. The sole issue on review is whether a grantor terminating a dealership for nonpayment of sums due under the dealership must provide the dealer 90 days' prior written notice of termination, pursuant to sec. 135.04, Stats. 1977. White Hen Pantry, the grantor, contends that if sums due under the dealership are not paid within 10 days of notice of nonpayment, the dealership is terminated at the end of the 10-day period. Gerald Buttke, the dealer, claims that notwithstanding the fact that the dealer fails to pay the sums claimed due within the 10-day period after notice of nonpayment of sums due, termination of the dealership is not effective until the expiration of 90 days after notice.

The issue is before us following the granting of Buttke's petition for review. We reverse the court of appeals and conclude that sec. 135.04, Stats. 1977, re-

quires that 90-days' prior written notice of termination be given when termination is for nonpayment of sums due under the dealership.

The dealership involved in the instant case began operating in November, 1974, after White Hen Pantry, a division of Jewel Companies, Inc., and a franchisor of convenience retail grocery stores, entered into a written franchise agreement with Gerald Buttke[1] for the operation of a White Hen Pantry convenience grocery store. Under the terms of the agreement Buttke sublet the premises occupied by the store from White Hen Pantry.

On May 22, 1979, White Hen Pantry advised Buttke by letter that there were sums due and owing under the franchise agreement and that unless $15,306.25, the amount claimed due, was paid by May 29, 1979, White Hen Pantry would "proceed to serve upon you a 10 day notice for termination of your franchise in accordance with the provisions of chapter 135 of the Wisconsin Statutes." Buttke made no payment, and by letter dated May 30, 1979, White Hen Pantry advised Buttke as follows: "in accordance with Section 135.04 of Wisconsin Statutes you are in violation of material financial requirements imposed upon you under your Franchise Agreement. Your failure to deliver to White Hen Pantry the above-referenced amount of $15,306.25 within 10 days from this date shall result in termination of your Franchise Agreement." The alleged debt remained unpaid.

[1] The agreement is a 14-page document entitled "White Hen Pantry Franchise Agreement." It contains 10 articles: Article 1, Lease of Real Property, Article 2, Lease of Trade Fixtures, Article 3, Security Deposit, Article 4, Franchise, Article 5, Nature of Relationship of Parties, Article 6, Security Interest, Article 7, Non-Assignability, Article 8, Defaults and Remedies, Article 9, General, Article 10, Term and Termination.

Beginning on November 4, 1977, Gerald Buttke began operating the franchise through Buttke Enterprises, Inc.; however, Buttke remained personally liable to White Hen Pantry for obligations under the franchise agreement.

On June 11, 1979, White Hen Pantry commenced an eviction action in Milwaukee County Circuit Court Small Claims Division. The complaint alleged that the franchise had been terminated by Buttke's failure to pay sums due and owing within ten days after receipt of the notice; that White Hen was entitled to possession of the premises pursuant to the franchise agreement which required the dealer to surrender possession to the grantor on termination of the dealership; and that Buttke owed White Hen Pantry a sum in excess of $15,306.25.

Buttke answered the complaint and also raised several issues by motion.[2] The circuit court heard Buttke's motion to dismiss for failure to state a claim upon which relief can be granted and held that the notice of termination was defective in that it attempted to terminate the dealership agreement in 10 days rather than in 90 days and that the eviction action was commenced prematurely in that it was commenced prior to the expiration of the 90-day period.[3] White Hen Pantry's eviction complaint was dismissed.

The court of appeals reversed the circuit court holding the 90-days' prior written notice requirement set forth in sec. 135.04, Stats. inapplicable to a termination for non-

---

[2] In this review the parties concede that their agreement is a dealership under sec. 135.02, Stats. 1979, and that sec. 135.04, Stats. 1979, is applicable inasmuch as White Hen Pantry is seeking to terminate the dealership. We also note that White Hen Pantry is not relying on the "insolvency provision" of sec. 135.04, Stats. 1977.

Other states have enacted statutes regulating franchises. For a discussion of these statutes and termination provisions, see Note, *Franchise Regulation: An Appraisal of Recent State Legislation,* 13 B.C. Ind. & Com. L. Rev. 529 (1972).

[3] Sec. 299.40(1), Stats. 1979, provides:

"WHEN COMMENCED. A civil action of eviction may be commenced by a person entitled to the possession of real property to remove therefrom any person who is not entitled to either the possession or occupancy of such real property."

payment of sums due. The court of appeals interpreted the statute as follows: "sec. 135.04, Stats. mandates a 90-day notice of termination with a 60-day period in which to cure the stated defects, *except* in cases of insolvency, assignment for benefit of creditors or bankruptcy (when no requirement of a notice of termination or default is necessary), and in cases of nonpayment of moneys owed (when a ten-day notice of default is required)." (Emphasis in original.)

Whether 10 days' or 90 days' notice is required is a question of statutory construction which is a question of law. We begin, as did the circuit court and the court of appeals, by considering the language of the statute. *Wisconsin's Environmental Decade, Inc. v. Public Service Comm'n,* 81 Wis.2d 344, 350, 260 N.W.2d 712 (1978).[4]

Sec. 135.04, Stats. 1977, entitled "Notice of termination or change in dealership," sets forth the notice requirements as follows:

"Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of

---

[4] Sec. 135.025, Stats. 1979, sets forth guides for our interpretation of the Act as follows:

". . . (1) This chapter shall be liberally construed and applied to promote its underlying remedial purposes and policies.

"(2) The underlying purposes and policies of this chapter are:

"(a) To promote the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis;

"(b) To protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships;

"(c) To provide dealers with rights and remedies in addition to those existing by contract or common law;

"(d) To govern all dealerships, including any renewals or amendments, to the full extent consistent with the constitutions of this state and the United States.

"(3) The effect of this chapter may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only."

termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy. If the reason for termination, cancellation, nonrenewal or substantial change in competitive circumstances is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and shall have 10 days in which to remedy such default from the date of delivery or posting of such notice."

The first sentence of sec. 135.04, Stats. 1977, requires 90 days' prior written notice of termination "except as provided" in sec. 135.04, Stats.[5] Sec. 135.04 provides only one exception to this 90-day notice requirement, explicitly stating in the fourth sentence that "if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy," then "[t]he notice provisions of this section shall not apply." We can find in sec. 135.04 no other exception to the requirement of 90 days' prior written notice.

Sec. 135.04 prescribes the contents of the 90-days' written notice. In all instances in which the 90-days' prior written notice is required, the notice must state the grantor's reasons for termination and the time within which the dealer may rectify or remedy the grantor's stated grievance. The legislature has provided that the specific content of the 90-days' written notice depends on

[5] The purpose of the 90-day period is apparently to enable the dealer and grantor a brief period in which each may prepare for termination.

whether the grantor's reason for termination is nonpayment of sums due or is some other claimed deficiency.

If the grantor's reason for termination is a dealer deficiency other than the nonpayment of the sums due under the dealership the dealer is entitled to written notice setting forth "all the reasons for termination." (Second sentence of sec. 135.04.) On the other hand if the grantor's reason for termination is the dealer's nonpayment of sums due under the dealership, the dealer is "entitled to written notice of such default." (Final sentence of sec. 135.04.) These are parallel provisions. Both allude to the 90 days' prior written notice. Both require the written notice to set forth a specific statement of the reason for termination. The statement of reasons identifies the deficiency or default which jeopardizes the dealership and enables the dealer to concentrate his business effort on remedying the claimed defect.

The dealer may rectify or remedy the "nonpayment of sums due" or "any [other] claimed deficiency" within a time period defined by the legislature in sec. 135.04. For claimed deficiencies other than nonpayment, "the dealer has 60 days in which to rectify" the deficiency (second sentence of sec. 135.04), and if the deficiency is rectified within that time period, "the notice shall be void" (third sentence of sec. 135.04). If the default occurs by reason of nonpayment of sums due, a shorter period applies. The legislature has provided "the dealer . . . shall have 10 days in which to remedy such default [of nonpayment] from the date of delivery or posting of such notice." (Final sentence of sec. 135.04.) The legislature did not expressly state that if the default is remedied within 10 days the notice is void.

In referring to default by nonpayment, the statute uses the phrase "10 days in which to remedy such default"; in referring to other claimed deficiencies the

statutory phrase is "60 days in which to rectify any claimed deficiency." The words "rectify" and "remedy" are synonyms, and it is clear that the words are used interchangeably in sec. 135.04, Stats. 1977. The difference between the time periods within which the dealer may rectify any claimed deficiency or remedy the nonpayment apparently reflects a legislative determination and a legislative policy as to the time in which it is reasonable to require the deficiency or default to be corrected.

The court of appeals rejected the construction that sec. 135.04, Stats. 1977, requires a 90-day notice period which includes a 10-day "cure" period, explaining:

"Respondent would have us construe the statute as requiring a 90-day notice period with a ten-day cure period for cases of non-payment of moneys owed. Such a construction, however, would ignore the clear language of the statute. 'If the reason for termination, . . . is nonpayment of sums due under the dealership the dealer shall be entitled to written notice of such default, and *shall have 10 days* in which to remedy such default *from the date of delivery or posting of such notice.*' [Emphasis supplied.]"

We conclude that the court of appeals has in its interpretation of sec. 135.04 ignored the statutory language referring to the 10 days as the period "in which to remedy such default." The court of appeals erred in equating the statutory 10-day period between notice and termination of the dealer's right to cure the default to the 90-day period between notice and termination of the dealership.[6]

---

[6] Apparently one reason the court of appeals interpreted the statute as requiring 10 days' rather than 90 days' prior notice was that the court of appeals thought that the legislature did not intend to adopt an 80-day free ride concept. The court of appeals described the 80-day free ride as follows:

"To allow a dealership a 90-day notice period for nonpayment of monies due within a 10-day cure period would give the nonpaying debtor an 80-day free ride. Where a dealer has become

We hold that pursuant to sec. 135.04, Stats. 1977, if the reason for termination, cancellation, nonrenewal or substantial change in competitive circumstances is non-payment of sums due under the dealership, the grantor must provide the dealer with at least 90 days' prior written notice. The notice must provide that the dealer has 10 days in which to remedy such default from the date of delivery or posting of such notice.[7]

This court's interpretation of sec. 135.04, Stats. 1977, is confirmed by the legislative history of the statute. The initial draft of the Wisconsin fair dealership law was submitted to the Legislative Reference Bureau by William P. Dixon, Legal Counsel to the Governor. Dixon's draft of the bill contained a provision substantially similar to the present sec. 135.04, Stats. 1977. Dixon's commentary to his draft of the bill was adopted by the Legislative Reference Bureau as its Analysis of the initial bill introduced in the legislature.[8] Dixon's Commentary and

delinquent in payments, the franchisor should not have to wait 80 days to recoup its losses, nor should it have to suffer the possibility of additional losses over the 80-day period while the dealership continues operation."

Buttke's brief in this court denies that there would be an 80-day free ride in the instant case. In any event, the issue whether there is an 80-day free ride is not before this court in this case.

[7] Buttke has also asserted in this action that he was entitled to two notices: The first notice would be a 10-day notice of non-payment granting Buttke 10 days to remedy the default. If Buttke failed to pay, White Hen Pantry would then send a second notice informing Buttke that the dealership terminates within 90 days of the second notice. We do not read the statute as requiring two notices.

[8] The Legislative Reference Bureau's Analysis is required by sec. 13.92(1)(b)2, Stats. 1979. The Analysis, as well as the draftsman's comments, may be considered as aids in interpreting this statute which is apparently ambiguous, that is "capable of being interpreted by reasonably well informed persons in either of two or more senses." The statute has been subject to different inter-

the Legislative Reference Bureau's Analysis, which are set forth in full below, make clear that the requirement of 90 days' prior written notice applies to terminations for nonpayment of sums:

"This bill prohibits franchisors from terminating, canceling, failing to renew or substantially changing the competitive circumstances of a franchise without good cause as defined in the bill. The franchisor must give 90 days' notice of such action and state all the reasons for such actions. The franchisee is given 60 days to correct the deficiency and if corrected within that period, the franchisor's action is void. The franchisee is given 10 days to remedy a nonpayment of sums due under the franchise. A franchisee may bring an action for damages or injunctive relief within one year after the violation if the franchisor violates any provision of this bill. The bill does not apply to motor vehicle dealers, distributors or wholesalers."

We conclude that the circuit court properly dismissed the eviction action since at the time the action was commenced White Hen Pantry was not entitled to possession of the sublet premises.

*By the Court.*—The decision of the court of appeals is reversed.

---

pretations not only by the parties but by the several courts which have examined it. *In re Estate of Haese,* 80 Wis.2d 285, 292, 297, 259 N.W.2d 54 (1977); *State v. Barkdoll,* 99 Wis.2d 163, 176, 298 N.W.2d 539 (1980).