DESIGNS IN MEDICINE, INC.,
Plaintiff,

v.

XOMED, INC., Defendant.

No. 81–C–762.

United States District Court,
E. D. Wisconsin.

Sept. 18, 1981.

James S. Grodin, Grodin & Grodin, Milwaukee, Wis., for plaintiff.

Michael J. Bowen, Foley & Lardner, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On July 1, 1981, plaintiff Designs in Medicine, Inc. instituted this action against defendant Xomed, Inc. In its complaint, plaintiff alleges defendant violated the Wisconsin Fair Dealership Law., Wis.Stat. § 135.01 *et seq.*, when it terminated plaintiff's dealership agreement on May 29, 1981. On August 6, 1981, the Court heard oral argument on plaintiff's motion for a preliminary injunction. After listening to the parties' arguments, the Court took the matter under advisement. Now, having considered the parties' briefs and arguments, the Court is prepared to rule on plaintiff's motion. This memorandum and order will constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

Plaintiff, a Wisconsin corporation, is engaged in the sale and distribution of medical products in the State of Wisconsin. Defendant, a Florida corporation, is a manufacturer of specialized medical devices and instruments used in micro-surgical procedures.

In 1974, plaintiff became defendant's manufacturer's representative for the State of Wisconsin. Plaintiff remained defendant's manufacturer's representative until approximately April, 1978, when it became defendant's dealer in that portion of Wisconsin east of a line running just east of Superior south to the Mississippi River, plus the City of La Crosse.

In December of 1978, defendant attempted to terminate plaintiff's dealership by means of a 30-day notice of termination. In response to that notice, plaintiff instituted an action against defendant in the Wisconsin Circuit Court in January of 1979 seeking injunctive relief under Chapter 135 of the Wisconsin Statutes to enjoin and restrain defendant from terminating its dealership. On February 28, 1979, Wisconsin Circuit Court Judge Michael A. Bowen granted plaintiff's motion for temporary injunctive relief and ordered defendant to reestablish plaintiff as its exclusive full-line-stocking dealer for its products in that portion of Wisconsin which plaintiff had been serving. This injunction became permanent by virtue of a judgment entered in favor of plaintiff in January, 1980.

On February 11, 1981, defendant attempted to place a formal dollar limitation on the amount of products which plaintiff could purchase from defendant each month. No such limitation had previously been imposed on plaintiff. Plaintiff responded to defendant's attempt to place a dollar amount on the amount of products it could purchase from defendant by filing a second action in state court. On May 11, 1981, Wisconsin Circuit Court Judge Laurence C. Gram, Jr. granted plaintiff's motion for temporary relief and enjoined defendant from imposing upon plaintiff a dollar limitation on the amount of purchases which plaintiff can make from the defendant per month. Judge Gram issued a written decision confirming his oral decision on May 27, 1981.

On May 29, 1981, two days after Judge Gram issued his written decision, defendant advised plaintiff that it was withdrawing from Wisconsin, but that it would honor plaintiff's orders for a period of 30 days in conformity with the provisions of the dealership agreement. The letter sent to plaintiff stated:

> The purpose of this letter is to advise Designs in Medicine, Inc. that Xomed Inc. has elected to withdraw altogether from the state of Wisconsin and cease doing business in such state immediately.

> However, Xomed Inc. will continue to comply with the provisions of the Manufacturer-Dealer Statement of Policy agreement dated July 25, 1978 between Xomed Inc. and Designs in Medicine, Inc. for a period of 30 days from the date this notice is mailed.

Since the date of the temporary injunction issued by Judge Barron, defendant has not had, and does not today have, any exclusive full-line-stocking dealer in plaintiff's Wisconsin territory, other than plaintiff.

Nationally, defendant has changed its marketing approach from one using independent dealers to one utilizing employee salespeople. Since July of 1980, defendant has had no dealers in the United States other than plaintiff.

Since July of 1980, plaintiff has sold a substantial quantity of defendant's products to Wisconsin Scientific, Inc., a corporation owned, managed and controlled by Neil Yontz, who also owns, manages and controls plaintiff. Wisconsin Scientific, Inc., in turn, has resold defendant's products to defendant's former dealers nationwide. Plaintiff did not tell defendant that Wisconsin Scientific, Inc. was reselling defendant's products in this way.

## II. MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction may not be granted unless it is shown that:

(1) the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; (3) the plaintiffs have at least a reasonable likelihood of success on the merits; and (4) the granting of a preliminary injunction will not disserve the public interest. *Fox Valley Harvestore v. A. O. Smith Harvestore Products*, 545 F.2d 1096, 1097 (7th Cir. 1976).

As plaintiff, Designs in Medicine, Inc. bears the burden of showing that each of these prerequisites to injunctive relief is satisfied. Because resolution of plaintiff's motion rests, to a large extent, on the third prerequisite, the Court will begin its analysis there.

### A. *Likelihood of Success on the Merits*

Plaintiff seeks to enjoin defendant from terminating its representative agreement in violation of Chapter 135 of the Wisconsin Statutes. Under Wis.Stat. § 135.03:

No grantor, directly or through any officer, agent or employe, may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor.

"Good cause" is defined in section 135.02 as:

(a) Failure by a dealer to comply substantially with essential and reasonable requirements imposed upon him by the grantor, or sought to be imposed by the grantor, which requirements are not discriminatory as compared with requirements imposed on other similarly situated dealers either by their terms or in the manner of their enforcement; or

(b) Bad faith by the dealer in carrying out the terms of the dealership.

In addition to setting forth the circumstances under which a grantor may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement, the Wisconsin Fair Dealership Law also requires grantors to give written notice to dealers of a decision to alter the basic relationship between the parties. Section 135.04 sets out the notice requirements:

Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy. If the reason for termination, cancellation, nonrenewal or substantial change in competitive circumstances is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and shall have 10 days in which to remedy such default from the date of delivery or posting of such notice.

This Court has consistently held that the statutory notice requirement must be strictly complied with and that the failure of a grantor to give the proper notice under the statute, in and of itself, constitutes a violation of the statute. *Lawrence Q. Esch v. Yazoo Manufacturing Company, Inc.*, No. 79–C–895 (E.D.Wis., April 30, 1980); *Al Bishop Agency, Inc. v. Lithonia-Division of National Service Industries, Inc.*, 474 F.Supp. 828 (E.D.Wis.1979); *Tucker Company, Inc. v. Energy Absorption Systems, Inc.*, No. 77–C–776 (E.D.Wis., December 12, 1977).

It is undisputed that defendant did not comply with the notice provision of section 135.04 in its termination letter of May 29, 1981. Notwithstanding the inadequacy of that notice, defendant contends plaintiff has not demonstrated a reasonable likelihood of success on the merits of its claim.

Defendant's position is based on two contentions. First, it contends Chapter 135 has no application to a manufacturer's complete and non-discriminatory withdrawal from a large geographical area, as opposed to a manufacturer's replacement of a dealer with another dealer or with its own sales force. Second, defendant contends Chapter 135 would be constitutionally defective as an excessive and unwarranted burden on interstate commerce if it were construed as applying to a manufacturer's complete and non-discriminatory withdrawal from a large geographical area.

In arguing that the Wisconsin Fair Dealership Law does not apply in this action, defendant relies on *Consumers Oil Corporation v. Phillips Petroleum Company*, 488 F.2d 816 (3d Cir. 1973). In *Consumers Oil*, the plaintiff sought an injunction under the New Jersey Franchise Practices Act against the defendant's withdrawal from the "northeast marketing area," which included New Jersey. The New Jersey Franchise Practices Act, like the Wisconsin Fair Dealership Law, forbade franchisors from terminating, cancelling or failing to renew a franchise without good cause. The statute limited "good cause" to " 'failure to substantially comply with those requirements imposed on him [franchisee] by the franchise.' " *Id.* at 818 (quoting statute). The district court denied the motion for a preliminary injunction. The court of appeals affirmed and remanded the case to the district court with direction to retain jurisdiction but to stay the proceedings as an appropriate exercise of federal abstention.

In holding that federal court abstention was appropriate, the court of appeals noted that the New Jersey Franchise Practices Act was silent as to its applicability in a situation where a franchisor wished to withdraw completely from the state. Because the court of appeals was of the opinion that "an interpretation of the New Jersey Franchise Practices Act as prohibiting Phillips from discontinuing its operations throughout the state would precipitate substantial constitutional questions," *id.* at 819, it abstained from ruling until the New Jersey courts had an opportunity to interpret the statute and, in so doing, perhaps avoid the constitutional question.

Like the New Jersey Franchise Practices Act, the Wisconsin Fair Dealership Law does not specifically state whether any or all of its sections are applicable in situations in which a grantor wishes to withdraw completely from the state. Nor has the Wisconsin Supreme Court squarely addressed the question of whether any or all sections of the law apply to a grantor who wishes to withdraw completely from the state.

Despite the absence of statutory language stating specifically that the law is to be applied to a grantor wishing to withdraw from the state, and despite the absence of a Wisconsin Supreme Court decision directly on point, this Court is satisfied that the language of section 135.04 and the Wisconsin Supreme Court's decision in *White Hen Pantry v. Buttke*, 100 Wis.2d 169, 301 N.W.2d 216 (1981) provide sufficient guidance to allow it to reach a decision. Therefore, the Court need not abstain from ruling on plaintiff's motion.

During oral argument, defendant contended the legislature did not intend section 135.03 to apply to grantors who wished to leave the state. It argued that the drafters

of the legislation could not have intended the section to apply because an act forbidding a business to withdraw from the state would violate the commerce clause.

In response to the defendant's argument, plaintiff directed the Court's attention to a proposed amendment to the law which the legislature rejected. That amendment provided that nothing in the law would hinder or restrict the right of a grantor to withdraw from a geographic marketing area. Because the amendment was rejected, plaintiff would have the Court infer that the legislature intended the law to apply to grantors who wished to withdraw from the state.

The Court cannot accept plaintiff's contention that the defeat of the proposed amendment signifies that the legislature intended Chapter 135 to apply to grantors wishing to withdraw from the state. In addition, the Court agrees with defendant that an interpretation of section 135.03 which would prevent a grantor from leaving the state would raise serious constitutional problems. *See Kealey Pharmacy and Home Care Services, Inc. v. Walgreen Company*, No. 80–C–552 (W.D.Wis., Oct. 23, 1980) (oral order denying motion for preliminary injunction). The Court need not, however, address the constitutional questions raised by section 135.03 at this time for plaintiff has also alleged defendant has violated section 135.04.

As stated earlier, this Court has consistently held that the statutory notice requirement of section 135.04 must be strictly complied with, and that the failure of a grantor to give the proper notice under the statute, in and of itself, constitutes a violation of the law. Inasmuch as the Wisconsin Supreme Court has held that the only exceptions to the notice requirement are those specifically mentioned in section 135.04 (*i. e.*, "insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy"), *White Hen Pantry v. Buttke*, 100 Wis.2d at 174, 301 N.W.2d 216, the issues this Court must resolve are whether the Wisconsin legislature properly exercised its police power when it enacted section 135.04

and whether the Wisconsin Supreme Court's interpretation of section 135.04, as applied in this action, constitutes an unconstitutional burden on interstate commerce.

■ In enacting the Wisconsin Fair Dealership Law, the Wisconsin legislature intended, *inter alia*, to promote the compelling interest of the public in fair business relations between dealers and grantors, and to protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships. Wis.Stat. § 135.025. Because the Constitution gives state legislative bodies "broad scope to experiment with economic problems," *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963), the Court has no difficulty in finding that the enactment of section 135.04 represents a valid exercise of the legislature's police power. Although the 90-day notice requirement places a restriction on a party's right to contract in the State of Wisconsin, that restriction represents a valid exercise of the legislature's police power for, as the Supreme Court noted in *Nebbia v. New York*, 291 U.S. 502, 527–528, 54 S.Ct. 505, 511–512, 78 L.Ed. 940 (1934);

> The Constitution does not guarantee the unrestricted privilege to engage in business or to conduct it as one pleases. Certain kinds of businesses may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned .... [S]tatutes prescribing the terms upon which those conducting certain businesses may contract, or imposing terms if they do enter into agreements, are within the state's competency.

Defendant does not rest its constitutional contentions solely on the police power issue. It also argues that the Wisconsin Fair Dealership Law runs afoul of the policy of free trade reflected in the commerce clause *even if* it represents a valid exercise of the legislature's police power for due process purposes.

In *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), the Supreme Court set out the following rule

for determining the validity of state statutes affecting interstate commerce:

Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960). If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. 397 U.S. at 142, 90 S.Ct. at 847.

Defendant does not contend that section 135.04 treats foreign franchise grantors differently from local franchise grantors. Nor does it contend that the effects of the notice requirement are anything but an incidental by-product of the law. Therefore, the Court must only determine whether the actual burden placed on interstate commerce by the notice requirements of section 135.04 is clearly excessive in relation to the putative local benefits of those requirements.

Section 135.04 does *not* prohibit a grantor from ever leaving the State of Wisconsin once a franchise has been established in the state. Rather, it only requires a franchisor who wishes to leave the state to notify the dealer of his decision 90 days in advance of his departure, to give the dealer the reasons for his departure and to provide him 60 days in which to rectify any claimed deficiency. Because section 135.04 mandates a relatively short waiting period and does not prevent a business from leaving the state after proper notice has been given, the Court finds its burden on interstate commerce minimal. Moreover, when balanced against the benefits afforded dealers by the 90 day notice, the burdens placed on out-of-state grantors and interstate commerce are clearly not excessive. Many times dealers have sacrificed other financial opportunities

to develop business for the grantor, and to deprive them of their livelihood without sufficient time to prepare alternatives would be unjust. It is certainly not unreasonable to require a grantor to plan 90 days into the future before making a decision which could affect the economic well-being of a dealer who has developed business for the grantor and has relied on that business for his own livelihood.

█ Based on the foregoing, the Court holds that section 135.04 of the Wisconsin Statutes does not violate the commerce clause and finds that plaintiff has succeeded in demonstrating at least a reasonable likelihood of succeeding on his claim that defendant has violated Wis.Stat. § 135.04.

### B. *Public Interest*

In *Al Bishop*, this Court addressed the question whether a preliminary injunction in a Wisconsin Fair Dealership Law action would serve the public interest. In concluding that a preliminary injunction would serve the public interest, the Court stated:

The public interest is represented by the statute itself. In passing the Wisconsin Fair Dealership Law, the Wisconsin Legislature apparently determined that willy nilly terminations of dealerships disserved the public interest and that it served the public interest to permit termination only upon a showing of good cause. This Court will not question the validity of the legislature's findings and thus will find that the public interest will not be disserved by the issuance of a preliminary injunction. 474 F.Supp. at 835.

Because of the Court's analysis in *Al Bishop* applies with equal weight to the notice provision of section 135.04, the Court finds plaintiff has succeeded in showing that a preliminary injunction would not disserve the public interest.

### C. *Irreparable Injury and Lack of Adequate Legal Remedy*

Plaintiff also contends that it does not have an adequate remedy for addressing its alleged injury and that it will be irrepara-

bly harmed if an injunction is not issued. Specifically, it contends that denial of its motion will result in the faltering of its sales network, and result in a loss of customer goodwill.

In light of defendant's assertion that it intends to withdraw completely from the state, the Court cannot accept plaintiff's contention that its sales network would be irreparably harmed by a denial of its motion. However, the Court agrees with plaintiff that it may suffer a loss of customer goodwill as a result of defendant's actions, and that this loss of goodwill constitutes an irreparable injury for which no adequate legal remedy exists.

Unless plaintiff is able to fulfill customer orders and service the customers who have relied on it, those customers may lose confidence in it and take their business elsewhere. Inasmuch as plaintiff's inability to serve its customers is due solely to defendant's actions, the Court finds plaintiff has shown it has no adequate legal remedy and may be irreparably injured if an injunction is not issued.

### D. *Balance of Harms*

The final determination the Court must make is whether the threatened injury to plaintiff outweighs the threatened harm an injunction may inflict on defendant.

Defendant argues that plaintiff's actions are undermining its attempts to establish a nationwide direct sales effort. It contends plaintiff has covertly collaborated with defendant's former dealers nationally in circumvention of defendant's switch to a direct sales marketing approach, and, as a result, has hamstrung defendant's attempt to get that marketing effort off the ground. As a further result of plaintiff's activities, defendant alleges it has experienced loss of employee morale and the loss of some key employees altogether.

Because the threatened harm to defendant as a result of an injunction would most likely be of a short duration—perhaps as short as 90 days if defendant were to comply with the provisions of section 135.04 and the Court were to accept its contentions regarding the constitutionality of section 135.03—the Court rejects defendant's contentions and finds that plaintiff has been successful in showing that any harm befalling defendant as a result of a grant of an injunction does not outweigh the harm that may befall it if an injunction is not granted.

### III. NOTICE

As stated earlier, section 135.04 requires each grantor intending to terminate a franchise to state all the reasons for its decision, and to provide its dealer with 60 days in which to rectify any claimed deficiency. Because it has not based its decision to leave the state on "any claimed deficiency," defendant contends it cannot possibly comply with this notice requirement.

■ The Court does not agree. The Court interprets section 135.04 as requiring the 60-day period to rectify any claimed deficiencies only in those situations where the decision is based on a deficiency. When the decision to terminate a dealership is not based on any claimed deficiency, the 90-day notice need only set out the reasons for termination.

### IV. SUMMARY

■ Based on the foregoing, the Court finds that plaintiff has met the prerequisites for a preliminary injunction on its claim that defendant has violated section 135.04. In reaching this decision, the Court has not found it necessary to reach plaintiff's contention that defendant has also violated section 135.03 or defendant's contention that section 135.03 is unconstitutional. The Court will reach these issues, if necessary, once defendant demonstrates it has complied with the requirements of section 135.04. It should be noted, however, that at this time, the Court does not espouse plaintiff's argument that section 135.03 prevents a grantor from permanently withdrawing from the state.

Finally, the Court hereby grants plaintiff's motion for a preliminary injunction and orders that defendant be and hereby is enjoined from terminating the plaintiff as its dealer without first complying with the requirements of Wis.Stat. § 135.04.