**BRUNO WINE & SPIRITS, INC., Plaintiff,**

v.

**GUIMARRA VINEYARDS, Defendant.**

No. 82–C–0847.

United States District Court, E.D. Wisconsin.

Oct. 4, 1983.

---

Irving W. Zirbel, Zirbel, Howard & Malone, Milwaukee, Wis., for plaintiff.

Arthur J. Harrington, Charne, Glassner, Tehan, Clancy & Taitelman, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

### BACKGROUND

The pretrial motion presently before the Court in this action raises an issue of first impression regarding the statutory exception to the notice requirement for termination or change in dealership status under the Wisconsin Fair Dealership Law, Wis. Stat. § 135.01 *et seq.* (1974).

In the spring of 1978, plaintiff Bruno Wines and Spirits, Inc., and defendant Guimarra Vineyards entered into a dealership agreement under which plaintiff was granted a franchise to sell and distribute defendant's wines in the State of Wisconsin. That dealership agreement continued in effect until May 4, 1982, when it was terminated by defendant.

On June 8, 1982, plaintiff filed in state court the complaint upon which the present motion is based, alleging principally that defendant's termination of the dealership agreement constituted a violation of chapter 135 of the Wisconsin Fair Dealership Law, Wis.Stat. § 135.01 et seq. (1974). On July 13, 1982, the action was removed to this Court upon the petition of the defendant.

On August 9, 1982, defendant filed its original answer and counterclaim, which incorporated three affirmative defenses— namely, that plaintiff is barred from recovery because it failed to mitigate its damages, that plaintiff's termination was for good cause as defined in Wis.Stat. § 135.-02(6) (1974), and that those claims of plaintiff's that accrued prior to June 8, 1981, are barred by the one-year statute of limitations in Wis.Stat. § 893.22(3) (1974). Plaintiff replied to the counterclaim on September 13, 1982.

On March 8, 1983, defendant filed the present motion for leave to amend its answer to assert an additional defense, as follows:

As and for its fourth affirmative defense, the notice provisions contained in Wis.Stat. § 135.04 are not applicable for the reason that the plaintiff was insolvent at the time of the termination of the business relationship between the plaintiff and the defendant.

On March 23, 1983, plaintiff filed its responsive brief, opposing defendant's motion to amend, to which defendant replied on April 4, 1983.

Because the Court concludes, as explained herein, that the exception to the notice requirement under section 135.04 applies in cases such as this only when the insolvency of the dealer is known to the grantor at the time of the decision to termi-

nate, defendant's motion to amend its answer to include a fourth affirmative defense must be denied.

## SECTION 135.04 OF THE WISCONSIN FAIR DEALERSHIP LAW

■ Section 135.04 of the Wisconsin Fair Dealership Law provides, in part, as follows:

> Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy....

While the "insolvency, assignment, or bankruptcy" provision establishes an exclusive statutory exception to the notice requirement, *White Hen Pantry v. Buttke*, 100 Wis.2d 169, 174, 301 N.W.2d 216, 219 (1981), the precise nature of the kind of "reason" that triggers the exception has not been judicially determined. At issue in this case is whether the defendant should be able to take advantage of the exception merely on the basis that plaintiff was, in fact, insolvent at the time of its termination, whether or not defendant knew of its insolvency,[1] or if the drafters of the statute envisioned that the exception would be invoked only when a grantor is actually aware of the insolvency of its grantee at the time of its decision to terminate.

In support of his client's motion to amend, counsel for the defendant has filed an affidavit in which he states that during the depositions of Louis Bruno, Jr., the president of plaintiff, and David Sheridan, a former employee and shareholder of plaintiff's, he discovered information suggesting that plaintiff may have been insolvent at or about the time of defendant's decision to terminate. Assuming plaintiff was, in fact, insolvent, defendant should be entitled to raise the section 135.04 exception as an affirmative defense, regardless of defendant's actual belief at the time of plaintiff's termination, or so the argument goes. Plaintiff opposes defendant's motion on the basis of legal insufficiency—that is, that the exception to the notice requirement is not available to any party like plaintiff whose decision to terminate was not based on but only coincident with the franchisee's insolvency.

Like counsel for the plaintiff, the Court cannot believe that the Wisconsin legislature intended the tortured reading of the word "reason" for which the defendant argues. Rather, the statute plainly contemplates that the circumstances giving rise to the termination, cancellation, or nonrenewal of a franchise be known to the grantor at the time of its decision; any other interpretation would stand the exception on its head and undermine the very purposes for which the Wisconsin Fair Dealership Law was enacted—namely, to equalize bargaining power between the parties to a dealership contract and to promote fair dealing. *See* Wis.Stat. § 135.025 (1982); *Boatland, Inc. v. Brunswick Corporation*, 558 F.2d 818, 823 (6th Cir.1977); *cf. Rossow Oil Company v. Heiman*, 72 Wis.2d 696, 702, 242 N.W.2d 176, 180 (1976) (statute enacted for protection of interests of dealer, whose economic livelihood may be imperiled by dealership grantor, whatever its size). The Court finds implicit support for its position

---

**1.** Based on the affidavit submitted by defense counsel and the argument offered on page four of plaintiff's responsive brief, it appears that defendant did not rely on any information regarding the financial condition of plaintiff in making its decision to terminate, and the

Court's resolution of defendant's motion to amend is based on this assumption. At the same time, the Court makes no determination as to whether plaintiff was, in fact, insolvent at the time of its termination.

in those cases in which the alleged reason for a change in distributor status was at issue; in each, it is clear that the termination of a dealership contract was premised on information known to the grantor at the time of its decision. *See Suburban Beverages v. Pabst Brewing Company*, 462 F.Supp. 1301, 1311 (E.D.Wis.1978); *Al Bishop Agency, Inc. v. Lithonia-Division of National Service Industries, Inc.*, 474 F.Supp. 828, 833–834 (E.D.Wis.1979); *Design In Medicine, Inc. v. Xomed, Inc.*, 522 F.Supp. 1054, 1060 (E.D.Wis.1981).

Moreover, the Court does not find persuasive the two policy arguments plaintiff raises in its reply brief—first, that a subjective interpretation of the exception would permit an unprincipled grantor to take advantage of the provision merely by asserting a belief in its dealer's insolvency, and second, that such an interpretation would encourage an insolvent dealer to shield its financial status from its grantor to prevent the latter from taking advantage of the exception. In addition to the fact that these predictions posit a world populated by unscrupulous grantors and deceitful dealers, they also assume that the two parties to a dealership agreement function with little, if any, knowledge of how the other is conducting itself in the business community and managing its internal affairs.

While the Court does not presume to know most everything about the nature of franchise relationships, it is sufficiently familiar with these types of actions to know that grantors and dealers routinely share information on marketing strategies, sales projections, product improvement, and consumer services. *See generally* Annot., *Fraud In Connection With Franchise or Distributorship Relationship*, 64 A.L.R.3d 6 (1974); Annot., *Validity, Construction, And Effect of State Franchising Statute*, 67 A.L.R.3d 1299 (1975). It may well be that the relationship between plaintiff and defendant in this case was not characteriz-

ed by such exchanges; however, that fact alone does not justify a tortured reading of the Wisconsin Fair Dealership Law based on the notion that insolvency is the sort of thing that is easily conjured up by a grantor or easily hidden by a dealer.

Finally, plaintiff's reference to the definition of "reason" provided in *Webster's New Twentieth Century Dictionary* does not persuade the Court that its interpretation is misguided. While entry 1(a), cited by plaintiff in its reply brief, is fully consistent with the Court's subjective reading of section 135.04,[2] entry 1(b), cited below from a companion volume, proves even more convincing:

> rea•son ... [A] consideration, motive, or judgment inducing or confirming a belief, influencing the will, or leading to an action or course of action: a rational ground or motive .... *Webster's Third New International Dictionary*, Unabridged (16th ed. 1976).

In short, the plain language of section 135.-04 dictates that the exception to the notice requirement be invoked only when insolvency, assignment, or bankruptcy is the motivating factor—the inducing action—leading to the final decision to terminate. Where, as here, there are no persuasive reasons to adopt a contrary interpretation, statutory language is properly given its ordinary, common sense meaning, *Malat v. Riddell*, 383 U.S. 569, 571, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966); *Estate of Klein v. Commissioner of Internal Revenue*, 507 F.2d 617, 621 (7th Cir.1974), *cert. denied*, 421 U.S. 991, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975), necessitating that defendant's interpretation of section 135.04 be rejected.

### DEFENDANT'S MOTION TO AMEND ITS ANSWER

Having determined that defendant's proposed affirmative defense is legally insufficient, the Court must deny its motion to amend. Although some courts have held that the merits of a claim should not

---

2. Defendant cites *Webster's New Twentieth Century Dictionary*, Unabridged (2d ed. 1967), for the proposition that "reason" means an "expla-

nation or justification of an act, idea, etc." Defendant's Reply Brief at 3.

be considered on a motion to amend, *see, e.g., Fox v. City of West Palm Beach,* 383 F.2d 189, 195 (5th Cir.1967), the majority view is that if the proposed change is frivolous or advances a claim that is legally insufficient on its face, the court may deny leave to amend. *See DeLoach v. Woodley,* 405 F.2d 496, 496–497 (5th Cir.1968); *Hackensack Water Company v. Village of Nyack,* 51 F.R.D. 7, 9 (S.D.N.Y.1970). Where, as here, the amended pleading could be defeated by a motion to dismiss, the grant of leave to amend would be a futile gesture. *Pan-Islamic Trade Corporation v. Exxon Corporation,* 632 F.2d 539, 546 (5th Cir.1980), *rehearing denied,* 642 F.2d 1210 (5th Cir.), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *United States v. Two Lots of Ground,* 30 F.R.D. 5, 7 (E.D.Pa.1962).

On the other hand, the Court's decision to deny leave to amend does not prevent defendant from filing a second motion to incorporate in its answer the affirmative defense that its decision to terminate was based, at least in part, on plaintiff's insolvency, known to defendant at the time of termination. Such an amendment would be wholly consistent with the Court's interpretation of section 135.04 and would promote a complete and fair disposition of this litigation on the merits. *See Summit Office Park, Inc. v. United States Steel Corporation,* 639 F.2d 1278, 1284 (5th Cir.1981).[3]

In any event, that is a matter left to the discretion of the defendant, best able to determine what factors prompted its decision to terminate, and the Court will resolve such a motion only after it has been properly filed and served and fully briefed. Today's decision goes no further than to DENY defendant's present motion to amend.

---

[3]. Plaintiff has stated in its reply brief that it would not likely oppose a motion by defendant to reformulate its fourth affirmative defense to state a claim consistent with the interpretation of section 135.04 the Court now adopts. Because such a motion is not presently before it, the Court does not reach the issue of plaintiff's prayer for discovery costs, allegedly attendant on the inclusion of such a legally sufficient defense in defendant's answer.