Charles H. HAMMIL d/b/a Hammil Equipment Company and Browntown Mill, Inc., Plaintiffs-Appellants, Cross-Appellees,

v.

RICKEL MANUFACTURING CORPORATION, Defendant-Appellee, Cross-Appellant.

Nos. 83–1249, 83–1463.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1983.

Decided Oct. 11, 1983.

poration (RMC), a Kansas corporation located in Kansas City, Missouri.[1] Defendant and HEC, a division of Browntown Mill, Inc., entered into a dealership agreement on June 1, 1976, entitling that division to distribute defendant's goods. After one year either party was entitled to terminate the agreement on 30 days' notice. On October 14, 1977, the defendant terminated the dealership, effective February 1, 1978. The plaintiffs charged that the termination was without good cause and that the notice of termination was defective in that it was unconditional and failed to provide a time period within which they could rectify any claimed deficiency. They sought $1,000,000 in damages plus costs and attorneys' fees and requested a jury trial. Defendant's answer asserted that (1) the contract was properly terminated under Kansas law, which was the law specified in the contract, (2) plaintiffs failed to mitigate damages, (3) plaintiffs defaulted in payments under the contract, (4) plaintiffs failed to submit appropriate financial documents and (5) plaintiffs failed to pursue the promotion and sale of defendant's products with their best efforts.

In an amended answer, defendant asserted the following additional affirmative defenses: (1) failure to take action called for in the notice of termination and to comply with the contract, thus estopping plaintiffs from suit, (2) insolvency[2] at time of notice, which, under the Wisconsin Fair Dealership Law (WFDL), estopped plaintiffs from proceeding, (3) bar of one-year statute of limitations, (4) waiver and (5) failure to state a claim. Next defendant moved for partial summary judgment, urging that Kansas law was applicable rather than the WFDL. Subsequently defendant moved for judgment on the pleadings and for summary judgment (1) because of the one-year statute of limitations contained in Wisconsin

Thomas D. Bell, Doar, Drill & Skow, S.C., Lila H. Hambleton, New Richmond, Wis., for plaintiffs-appellants, cross-appellees.

Richard R. Grant, Consigny, Andrews, Hemming & Grant, Janesville, Wis., for defendant-appellee, cross-appellant.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and NEAHER, Senior District Judge.*

CUMMINGS, Chief Judge.

On January 9, 1979, Charles H. Hammil, doing business as Hammil Equipment Company (HEC), and Browntown Mill, Inc., a Wisconsin corporation located in Milton, Wisconsin, sued Rickel Manufacturing Cor-

---

* The Honorable Edward R. Neaher, Senior District Judge for the Eastern District of New York, is sitting by designation.

1. The lawsuit was initially filed in the Circuit Court for Rock County, Wisconsin, but was removed by defendant under 28 U.S.C. § 1441 to the court below as a diversity case.

2. The dealership agreement entitled defendant to terminate immediately a dealer subject to insolvency proceedings. The record does not reveal that HEC was subject to insolvency proceedings at the time the termination notice was issued nor at any time thereafter.

Statute § 893.93(3)(b) and (2) because the dealership agreement gave defendant an immediate right to terminate without liability therefor.

The district court handed down four memoranda and orders. In the first, the court ruled that Wisconsin law governed this diversity action because the WFDL represented fundamental policy of that state "to protect dealers from the unjust termination of their dealership agreements" (No. 79–C–77 at 6 (W.D.Wis. Sept. 10, 1980)).

In its second decision, the court granted defendant's motion for summary judgment with respect to plaintiffs' second claim (which arose under Wis.Stat. § 135.04 (1979) setting forth the notice requirements for terminating or changing a dealership) on the ground that a statutory violation occurs when a defective notice is sent to a dealer, so that the one-year statute of limitations contained in Wisconsin Statutes § 893.93(3)(b) barred that cause of action. However, as to plaintiffs' claim under § 135.03 for termination without good cause, the court held no violation occurred under § 135.03 until termination so that the cause of action under that provision was timely and had to be tried.

In his third decision and order, which was a pre-trial ruling, Judge Warren permitted defendant to introduce good cause evidence regarding plaintiffs' insolvency despite no reference thereto in the termination notice, on the ground that the statutory notice requirements specifically exempted a reference to dealer insolvency.

The court's final decision and order were handed down after the jury trial on the § 135.03 claim resulted in a special verdict that defendant had good cause for terminating the dealership. The court held that adequate evidence of plaintiff Hammil's precarious financial situation permitted the jury to infer that he was insolvent, in bad faith, and in noncompliance with "reasonable and nondiscriminatory requirements of the dealership agreement" (No. 79–C–77 at 3 (W.D.Wis. Jan. 17, 1983)), any of which, he said, would constitute good cause for termination under Section 135.03. Judge Warren also held that under the WFDL, defendant need only prove good cause for termination by a preponderance of the evidence. He concluded that issues of insolvency and financial status were material to the issue of good cause for termination and that the evidence of plaintiffs' financial dealings enabled the jury to consider the issue of their bad faith as well. Therefore, plaintiffs' motions for judgment n.o.v. and for a new trial were denied. Plaintiffs no longer challenge defendant's good cause for termination.

On appeal, plaintiffs argue that the district court erred in granting defendant's motion for summary judgment on the claim arising under § 135.04. That Section provides as follows:

135.04 Notice of termination or change in dealership. Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy. If the reason for termination, cancellation, nonrenewal or substantial change in competitive circumstances is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and shall have 10 days in which to remedy such default from the date of delivery or posting of such notice.

Another provision of the WFDL covers damage actions and provides as follows:

135.06 Action for damages and injunctive relief. If any grantor violates this chapter, a dealer may bring an action

against such grantor in any court of competent jurisdiction for damages sustained by him as a consequence of the grantor's violation, together with the actual costs of the action, including reasonable actual attorney fees, and the dealer also may be granted injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances.

At the time this lawsuit was filed in 1979, § 893.14 together with § 893.22 of the Wisconsin Statutes provided that an action under the WFDL must be commenced within one year "after the cause of action has accrued." Their successor, § 893.93(3)(b), became effective on July 1, 1980, and provides that an action under the WFDL "shall be commenced within one year after the cause of action accrues or be barred."

Plaintiffs contend that the court below should not have found the § 135.04 claim barred by the statute of limitations, because that claim did not accrue until the dealership actually terminated on February 1, 1978. Judge Warren had found that the action accrued at the time the defective notice was given in October 1977. For the reasons stated below, we affirm that the § 135.04 claim was barred because not filed within the statute of limitations period.

Under Wisconsin law, a cause of action accrues when "there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Wisconsin Natural Gas v. Ford, Bacon and Davis Construction,* 96 Wis.2d 314, 323, 291 N.W.2d 825, 830 (1980) (quoting *Holifield v. Setco Industries, Inc.,* 42 Wis.2d 750, 756, 168 N.W.2d 177, 179 (1969)).

According to § 135.06 a dealer has a claim under the WFDL capable of present enforcement when his or her grantor's violation of a provision of the WFDL has caused the dealer to incur damages. In the case before us, both RMC's alleged violation of § 135.04 and HEC's resulting damages occurred before January 9, 1978, or more than one year before HEC commenced its action.

RMC has suggested that HEC was insolvent, so that RMC was not required to provide HEC with notice of an opportunity to cure and hence was not in violation of § 135.04. We cannot accept this suggestion for two reasons. First, the fact of HEC's insolvency has not really been established in the record before us. It is true that Judge Warren indicated that there was evidence from which the jury could have decided that HEC was insolvent. However, the jury's verdict that there was good cause for HEC's termination did not depend on a decision that HEC was insolvent; that verdict may have been based solely on the existence of two delinquent accounts. The existence of two delinquent accounts themselves, of course, does not give rise to the necessary conclusion that a delinquent payor is insolvent. The verdict may also have been based on HEC's bad faith or failure to comply with RMC's essential, reasonable and nondiscriminatory requirements (RMC App. 117).

Secondly, even if the jury had found that HEC was insolvent, that finding alone would not have been sufficient under § 135.04 to exempt RMC from the opportunity-to-cure requirement. That Section's exceptions come into play only "if the reason for termination * * * is [dealer's] *insolvency,* the occurrence of an assignment for creditors or bankruptcy" (emphasis added). The record before us simply does not show that RMC's reason for termination was HEC's insolvency, nor is either of the other exceptions claimed.

RMC's termination notice stated that HEC was being terminated because HEC's failure to pay two delinquent accounts, failure to submit financial statements to RMC, and failure to use best efforts to promote and sell RMC's machinery constituted specific defaults under the Dealership Agreement (HEC App. 37–38). Further, RMC does not claim that HEC's insolvency was a reason for the termination. The most RMC asserts is that it presented sufficient evidence from which the jury could find insolvency. We cannot assume that RMC terminated HEC for in-

solvency when RMC has never contended that this was its reason and when in its notice RMC instead gave other reasons for the termination.

Because RMC's reasons for termination contained in the notice did not fall within the three exceptions to § 135.04's requirements language, RMC's notice was required to "state the grantor's reasons for termination and the time within which the dealer may rectify or remedy the grantor's stated grievance." *White Hen Pantry v. Buttke,* 100 Wis.2d 169, 174, 301 N.W.2d 216, 219 (1981), and § 135.04. · RMC violated § 135.-04 in October 1977 when it provided HEC with the unconditional and therefore deficient notice.

█ As soon as HEC incurred damages as a result of RMC's violation, its cause of action under § 135.04 accrued and the one-year statute of limitations period began to run. It is clear that these damages were incurred more than one year before January 9, 1979, the date plaintiffs commenced their cause of action. This record shows that the parties ceased doing business together right after the notice of termination in October 1977, and plaintiffs were given no time to cure their deficiencies. At the same time, RMC expanded its business operations with Fertilizer Application Systems, Inc. (FAS), its Watseka, Illinois dealer, to include the Wisconsin area that was previously HEC's primary responsibility. Commencing in October 1977 at the time of the termination notice RMC no longer allowed HEC to order parts at the dealer discount rate (HEC App. 30). From thenceforward, customers who needed parts not available in HEC's remaining inventory were told by HEC to obtain them from FAS (HEC App. 54). About November 11, 1977, RMC removed the dealership floor plan equipment from HEC's premises and immediately transferred it to FAS (HEC App. 31). RMC authorized FAS, not HEC, to make contacts with potential Wisconsin customers at a major trade show in late November 1977 (HEC App. 32). Finally, on

December 5, 1977, RMC paid HEC the final balance due to the terminated dealer (HEC App. 35). It is clear, then, that RMC substituted FAS for HEC as its Wisconsin dealer when it provided HEC with the termination notice in October 1977. It is at that time that HEC first incurred damages as a result of RMC's arguably defective notice and not, as HEC argues, at the February 1, 1978 termination date.

Plaintiffs' cause of action for damages resulting from defendant's violation of § 135.04 was barred by the Wisconsin statute of limitations because it was brought more than one year after the cause of action accrued. Therefore, the district court's judgment is affirmed.[3]

---

**3.** Defendant's motion to dismiss the appeal is denied. In view of our disposition, we have found it unnecessary to address other contentions of the parties.